**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**MARISA CHARITY,**

       **Plaintiff,**

**v.**                                                      **Case No:   6:19-cv-1075-Orl-EJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

       **Defendant.**
_____/

**ORDER**

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits ("DIBs"). The Court has reviewed the record, including the administrative law judge's ("ALJ") decision, the administrative record, and the joint memorandum of the parties. After due consideration, the Court determines that the Commissioner's final decision is due to be affirmed.

**I.     PROCEDURAL BACKGROUND**

On December 7, 2015, Plaintiff protectively filed an application for DIBs, alleging disability due to her Stage I breast cancer, type 2 diabetes, severe asthma, and high blood pressure. (Tr. 78, 80, 169–175.) In the application, Plaintiff indicated that her alleged onset date of disability was September 10, 2015. (Tr. 80.) Plaintiff's claim was denied initially and upon reconsideration. (Tr. 96–98, 103–107.) After an administrative hearing (Tr. 31–67), the ALJ issued a decision finding Plaintiff not disabled (Tr. 12–30). The Appeals Council denied Plaintiff's request for review (Tr. 1–6), and she now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) (Doc. 1).

## II.     STANDARD

An individual is considered disabled and entitled to disability benefits if the person is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(B). In evaluating a disability claim, the Commissioner must use the following five-step sequential analysis:

1. If the applicant is working, the claim is denied.

2. If the impairment is determined not to be severe—i.e., if the impairment or combination of impairments does not significantly limit the individual's physical or mental ability to do basic work—then the claim is denied.

3. If the impairment or combination of impairments meets or medically equals one of the specific impairments listed in the regulations, then the claimant is entitled to disability benefits. If not, then the Commissioner proceeds to step four.

4. If the claimant has the residual functional capacity ("RFC") to perform past work, then the claim is denied.

5. If the claimant cannot perform past work, then the Commissioner must determine whether there is substantial work in the economy that the claimant can perform. If so, the claim is denied.

*See* 20 C.F.R. §§ 404.1520–404.1576.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 10, 2015. (Tr. 17.) At step two, the ALJ found that Plaintiff had the following severe impairments: breast cancer, hypertension, asthma, diabetes mellitus, neuropathy, hyperthyroidism, and "degenerative joint disease bilateral hands, fingers,

[and] wrists." (Tr. 18.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1526. (*Id.*) Before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform the following:

> [L]ight work[1] as defined in 20 C.F.R. § 404.1567(b), except in an 8-hour workday, claimant can sit for up to 6 hours and stand and/or walk for up to 4 hours. Claimant can occasionally balance, stoop, kneel, crouch, and crawl. She can occasionally climb ramps and stairs; never ladders, ropes, or scaffolds. She can frequently handle and finger bilaterally. Claimant must avoid concentrated exposure to hazards and humidity, vibration fumes, odors, dust, gases[,] and poor ventilation. Claimant is limited to simple routine unskilled tasks due to cognitive effects of fatigue.

(*Id.*) At step four, the ALJ concluded that Plaintiff could not return to her past relevant work as a baker and manager of a bakery. (Tr. 24.) The ALJ concluded the analysis at step five, finding that in light of Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (*Id.*) Such jobs are marker, ticket taker, and blade balancer. (*Id.*)

## III.   SCOPE OF JUDICIAL REVIEW

On judicial review, a Court may determine only whether the ALJ correctly applied the legal standards and if the ALJ's findings are supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir.1997)). A Court may "not reweigh the evidence or substitute [its] own judgment for that

---

[1] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." SSR 83-10. The regulations go on to clarify that "[e]ven though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing -- the primary difference between sedentary and most light jobs." *Id.*

of the agency." *Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 683 (11th Cir. 2019) (citing *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

The Eleventh Circuit defines "substantial evidence" as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Raymond v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 766, 774 (11th Cir. 2019) (citing *Lewis*, 125 F.3d at 1439). A Court determines whether substantial evidence exists by considering evidence that is both favorable and unfavorable to the Commissioner's decision. *Lynch v. Astrue*, 358 F. App'x 83, 86 (11th Cir. 2009). "Even if the evidence preponderates against the [Commissioner's] findings, [the Court] must affirm if the [Commissioner's] decision is supported by substantial evidence. *Gibbs v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 799, 800 (11th Cir. 2017) (citing *Crawford*, 363 F.3d at 1158–59).

## IV. DISCUSSION

The two issues Plaintiff raises on appeal relate to her RFC. First, Plaintiff contends that the ALJ erred by failing to include her use of a cane in the RFC. Second, Plaintiff argues that the ALJ failed to properly account for her side effects from chemotherapy medication. Upon review, the undersigned finds that both arguments fail.

### A. The ALJ Was Not Required to Include Plaintiff's Use of an Assistive Device in the RFC

On January 2, 2018, treating physician Judith Mathura, M.D., prescribed Plaintiff a cane after she experienced a fall. (Tr. 701.) After receiving the prescription, Plaintiff presented to Dr. Mathura on two more occasions, March 6, 2018 (Tr. 692–96) and April 19, 2018 (Tr. 688–91). At both appointments, Dr. Mathura noted that Plaintiff had normal "gait and station" and "movement of all extremities." (Tr. 691, 696.) Moreover, at neither appointment did Dr. Mathura note that Plaintiff was ambulating with a cane. (*Id.*)

Plaintiff used a cane during her hearing before the ALJ. (Tr. 45.) She explained that Dr. Mathura prescribed the cane because of her fall and she uses it to keep balance. (Tr. 46.) In fact, Plaintiff testified that she would lose balance on even terrain if she was not using her cane. (*Id.*) Plaintiff also contends that she can walk longer distances with her cane: without it she can walk only few feet, but with it, she can walk about 1 to 1.5 miles or 10 to 15 minutes. (Tr. 46–47.) However, even with the cane, Plaintiff is limited to walking at a slow pace. (*Id.*) Despite Plaintiff's testimony about her cane, the ALJ did not include this restriction in the hypothetical posed to the Vocational Expert (the "VE"). (Tr. 56–62.)

In the decision, the ALJ discussed Plaintiff's testimony about her ability to ambulate with and without a cane. (Tr. 19.) The ALJ ultimately found that "the objective medical evidence of record does not support [Plaintiff's] alleged loss of functioning" of, *inter alia*, her ability to walk without a cane. (Tr. 20.) The ALJ noted that although Plaintiff received her cane prescription in January 2018, Dr. Mathura indicated in her April 2018 treatment note that Plaintiff had a normal gait. (Tr. 22–23.) The ALJ also noted that the April 2018 treatment note failed to mention that Plaintiff was using a cane. (Tr. 23.)

Plaintiff argues that the ALJ erred by omitting, in both Plaintiff's RFC and the hypothetical posed to the VE, Plaintiff's reliance on an assistive device. (Doc. 17 at 15.) Without this limitation in the hypothetical, Plaintiff contends that the VE's testimony can no longer serve as substantial evidence of jobs in significant numbers that Plaintiff can perform. (*Id.* at 16–17.) In response, the Commissioner argues that the ALJ properly considered and ultimately rejected Plaintiff's assertion that she needs a cane. (*Id.* at 17.) The Court agrees with the Commissioner on this issue.

The RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing

basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). Though neither party cites to Social Security Ruling 96-9p,[2] the undersigned finds it pertinent to the instant case. Social Security Ruling 96-9p provides guidance on how the administrative law judge should consider a claimant's use of a hand-held assistive device, such as a cane. "Under SSR 96-9p, a claimant must present medical documentation (1) establishing her need for a cane or other device and (2) describing the circumstances for which it is needed." *Williams*, 2019 WL 2511592, at *3 (citing *Kendrick*, 2018 WL 4126528, at *3). Without such a showing, an administrative law judge would not be required to include the use of an assistive device in the RFC or the hypothetical to the vocational expert. *See Kendrick*, 2018 WL 4126528, at *3. "Further, a prescription or the lack of a prescription for an assistive device is not necessarily dispositive of medical necessity." *Id.* (citing *Staples v. Astrue*, 329 F. App'x 189, 191 (10th Cir. 2009)); *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002)).

Though the ALJ did not explicitly state that Plaintiff's cane was not medically necessary, the ALJ called Plaintiff's reliance on a cane into question. The ALJ highlighted Plaintiff's normal gait from Dr. Mathura's April 2018 treatment note. (Tr. 23.) The ALJ also pointed out that

> claimant's testimony and statements also suggest that she is more functional than is alleged. . . . Although she testified to only being able to walk a couple feet without a cane, claimant testified that with her cane she could walk for as much as 1 to 1.5 miles before needing

---

[2] Though Social Security Ruling 96-9p addresses the use of hand-held assistive devices when the claimant's RFC limits the claimant to *sedentary work*, some courts have also applied it to situations where a claimant's RFC limits the claimant to light work. *See, e.g.*, *Ortiz v. Saul*, No. 8:19-cv-199-T-CPT, 2020 WL 1527856, at *4 n.6 (M.D. Fla. Mar. 31, 2020); *Williams v. Acting Comm'r of Soc. Sec. Admin*, No. 3:18-cv-764-J-MCR 2019 WL 2511592, at *5 (M.D. Fla. June 18, 2019); *Kendrick v. Comm'r of Soc. Sec.*, No. 5:17-cv-244-Oc-GKS-PRL, 2018 WL 4126528, at *3 (M.D. Fla. July 9, 2018), *report and recommendation adopted*, 2018 WL 4112832 (M.D. Fla. Aug. 29, 2018).

> a break. The claimant also told her treating endocrinologist that she was walking 2 miles a day.

(*Id.*) Thus, the Court finds that the ALJ provided substantial evidence that demonstrates Plaintiff failed to establish that she needs a cane. As such, it was not necessary to include a cane limitation in Plaintiff's RFC or the hypothetical to the VE. *See Kendrick*, 2018 WL 4126528, at *3.

### B. The ALJ Accounted for Plaintiff's Medications

At the hearing before the ALJ, Plaintiff testified that she was experiencing side effects from her chemotherapy medication. (Tr. 43.) Side effects included joint pain, nausea, confusion, and memory problems. (*Id.*) Plaintiff also testified to problems with her right leg due to neuropathy and arthritis, as well as difficulty gripping in both hands. (Tr. 43–44.) It was Plaintiff's counsel who elicited the aforementioned testimony from Plaintiff. (*Id.*)

Relying on *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981), Plaintiff argues that the ALJ "failed to make any findings regarding the effect of [Plaintiff]'s prescribed medications on her ability to work." (Doc. 17 at 22–26.) In response, the Commissioner argues that the ALJ fully considered Plaintiff's side effects to her medications. (*Id.* at 26.) The Court agrees with the Commissioner.

In the Eleventh Circuit, the administrative law judge is required to develop a full and fair record, even if the claimant is represented by counsel. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *see also Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). If a claimant does not waive his or her right to counsel, but nevertheless proceeds with a Social Security hearing without counsel, then the administrative law judge has a duty to "scrupulously and conscientiously probe into, inquire of, and explore . . . all the relevant facts." *Cowart*, 662 F.2d at 735 (quoting *Cox v. Califano,* 587 F.2d 988, 991 (9th Cir. 1978)).

However, if a claimant is assisted by counsel, then there is no duty to develop the record

to the same degree as in *Cowart*. *See, e.g.*, *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 904 (11th Cir. 2011) ("Where a represented claimant raises a question as to the side effects of medications, but does not otherwise allege the side effects contribute to the alleged disability, we have determined the [administrative law judge] does not err in failing to inquire further into possible side effects.") (internal citations and quotations omitted); *Francis v. Astrue*, No. 3:10-cv-1030-J-34JBT, 2011 WL 7111553, at *3 n.2 (M.D. Fla. Nov. 16, 2011), *report and recommendation adopted*, 2012 WL 260157 (M.D. Fla. Jan. 30, 2012) ("However, unlike the plaintiff in *Cowart*, who was not represented by counsel, [the] [p]laintiff in this case was represented by an attorney during the hearing before the ALJ and this distinction has been recognized by the Eleventh Circuit in subsequent decisions.").

Based on the foregoing, *Cowart* is inapplicable in the instant case. Plaintiff was assisted by counsel during her hearing; she did not testify about whether or how her chemotherapy treatment prevented her from working; and the ALJ discussed Plaintiff's side effects in the decision. Specifically, the ALJ compared Plaintiff's testimony on her side effects to the statements contained in treatment notes from the oncologist and the endocrinologist. (Tr. 19–22.) The ALJ remarked that Plaintiff testified about "chemotherapy side effects, namely joint pain, nausea, hot flashes, sweating, confusion, and memory problems." (Tr. 19.) As to the treatment notes, the ALJ said the following:

> [The oncologist] stated that claimant would be monitored very closely for any side effects. As of August 15, 2016, the claimant reported that she continued to take Aromasin daily and mentioned some fatigue and joint stiffness but which was tolerable. . . .
>
> The claimant followed up with the oncologist every 3 to 4 months. Oncology treatment notes dated in November 2016, show claimant was doing fairly well except for complaints of chronic joint pains. There is also no indication that pain medication was prescribed. Follow up treatment visits in February 2017 and May 2017 show

> complaints of some fatigue and weakness but that claimant had been tolerating the prescribed chemotherapy medication without any problems. She had tried multiple aromatase inhibitors including Aromasin, Arimidex, and Evista and the claimant decided to switch back to Arimidex due to side effects of the other medications. She denied cardiac, respiratory, GI, or GU symptoms. In her September 2017 oncology visit, claimant complained of some "mild arthralgias and night sweats" but this was described as "stable. . . ."
>
> In June 2017, claimant presented to a new endocrinologist . . . for treatment of diabetes. She complained of symptoms [such] as fatigue, excessive sweating, burning in feet, insomnia, weight gain, excessive thirst, and being "cloudy" due to chemotherapy drugs. (*Despite this report, the oncology treatment notes show at that time that the claimant had been tolerating the chemotherapy drugs without any cognitive or memory problems reported. As of February–September 2017, the only major complaints documented in the oncology treatment notes concern some mild arthralgias, some fatigue and some weakness.*)

(Tr. 20–21) (emphasis in original).

It is evident the ALJ considered Plaintiff's side effects from the chemotherapy. However, the ALJ ultimately found that Plaintiff's side effects were not as inhibitive as she described. Moreover, as the Commissioner points out, the ALJ accounted for some of Plaintiff's side effects in the RFC by limiting her to "simple routine unskilled tasks due to cognitive effects of fatigue." (Tr. 18.) Therefore, not only did the ALJ not have a duty to develop the testimony as in *Cowart*, but the ALJ also considered Plaintiff's side effects. As such, the Court does not find that the ALJ erred in this regard.

## V.   CONCLUSION

Accordingly, it is hereby **ORDERED** that:

1. The Commissioner's final decision is **AFFIRMED**; and

2. The Clerk is **DIRECTED** to enter judgment accordingly and **CLOSE** the file.

    **DONE** and **ORDERED** in Orlando, Florida on September 29, 2020.

- 10 -

_____

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record